FILED

2025 Sep-30  PM 03:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

|  |  |  |
|---|---|---|
| PRANAV MISHRA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-01537-SGC |
| | ) | |
| STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiffs Pranav Mishra and Mamta Mishra initiated this lawsuit against State Farm Fire and Casualty Company in the Circuit Court of Etowah County, Alabama, asserting three causes of action: breach of contract (Count I), bad faith (Count II), and fictitious parties (Count III). (Doc. 1-1).[2] State Farm timely removed the action, invoking this court's diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1). Presently pending is State Farm's motion for summary judgment, which is fully briefed and ripe for adjudication. (Doc. 17;  *see* Docs. 18, 23, 24). For the reasons stated below, State Farm's motion for summary judgment will be granted.

---

[1] The parties have unanimously consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 9).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

## I.  Standard of Review

Under Rule 56 of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, the non-moving party must go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome of the case will preclude summary judgment. *Id.* All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

Where, as here, a federal district court has diversity jurisdiction over state law claims, the court must apply the substantive law of the forum state. *See McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Consequently, substantive Alabama law applies to the Mishras' claims. However, the procedural aspects of the case, including those that relate to whether evidence is legally sufficient to submit an issue to a jury, are a question of federal law. *Harrell v. Wal-Mart Stores E., LP*, 724 F. Supp. 3d 1250 (N.D. Ala. 2024).

## II. Undisputed Material Facts

Since 2006, State Farm has insured the Mishras' residence at 145 River Brow Drive, Gadsden, AL 35901 (the "Property") under a homeowners' policy of insurance, Policy No. 01-GU-3019-8 (the "Policy").[3] (Doc. 17-1 at 5, 8; Doc. 17-

---

[3] Pursuant to the Court's Civil Administrative Procedures Manual for CM/ECF, a party's address should be redacted so that only the city and state are identified, unless otherwise ordered by the court. Here, however, the Mishras disclosed their address in their initial complaint (Doc. 1-1), and their address appears throughout the docket, including in State Farm's brief in support of its motion for summary judgment (Doc. 18 at 4), the Mishras' response brief (Doc. 23 at 4), and exhibits in opposition to State Farm's motion for summary judgment (Doc. 23-2 at 3). Federal Rule of Civil Procedure 5.2(h) provides that "a person waives the protection of Rule 5.2(a) [which governs redactions of social security numbers, birthdays, minors, and financial account numbers] as to the person's own information by filing it without redaction and not under seal." The court finds the waiver principle applies equally to the requirements of the Civil Administrative Procedures Manual. Further, the property address is an essential component of

2). The Policy specifically provides coverage, in pertinent part, for the following losses:

## SECTION I – ADDITIONAL COVERAGES

\*\*\*

11. **Collapse**. *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a ***building structure*** or any part of a ***building structure***.

\*\*\*

b. The collapse must be directly and immediately caused by one or more of the following:

(1) perils described in **SECTION I – LOSSES INSURED, COVERAGE B, PERSONAL PROPERTY**. These perils apply to ***building structures*** covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

\*\*\*

(5) use of defective material or methods in the construction (includes remodeling or renovation) of the ***building structure***, if the collapse occurs during the course of the construction of the ***building structure.***

\*\*\*

## SECTION I – LOSSES INSURED

## COVERAGE B – PERSONAL PROPERTY

*We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the

---

the litigation. Accordingly, the court finds it unnecessary to redact the property address at this late stage of the proceedings.

loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. . . .

\*\*\*

2. **Windstorm or hail. . . .**

(Doc. 17-2 at 13, 15, 17). The Policy specifically excludes the following losses:

### SECTION I – LOSSES NOT INSURED

\* \* \*

1. *We* will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as the result of any combination of these:

    a. collapse, except as specifically provided in **SECTION I— ADDITIONAL COVERAGES**, **Collapse**;

\* \* \*

    c. Freezing, thawing, pressure, or weight of water, ice, snow or sleet, whether driven by wind or not, to:

\* \* \*

        (2) an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

\* \* \*

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below.

\* \* \*

    b. defect, weakness, inadequacy, fault, or unsoundness in:

> (1) planning, zoning, development, surveying, or siting;
>
> (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;
>
> (3) materials used in repair, construction, renovation, remodeling, grading, or compaction, or
>
> (4) maintenance;
>
> of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**;
>
> * * *
>
> However, **we** will pay for any resulting loss from items 3.a, 3.b, and 3.c unless the resulting loss is itself a Loss Not Insured as described in this Section.

(Doc. 17-2 at 19–23).

During the night of January 3, 2023, a storm occurred in Gadsden, Alabama. (Doc. 17-1 at 9). The following morning, Pranav walked outside and saw the Property's retaining wall, driveway, and fence had collapsed. (*Id.* at 7-8). He also saw that large trees had fallen next to the retaining wall. (*Id.* at 9-10). Pranav reported the loss to State Farm, and within two days, State Farm sent a claims specialist to inspect the Property. (*Id.* at 10).

State Farm then hired Joshua Brackett, a licensed forensic engineer with Donan Engineering, to independently investigate the cause of the collapse. (Doc. 17-1 at 11; Doc. 17-5 at 5, 8). Brackett routinely investigates the causes of

structure collapses and failures. (*Id.* at 5). On January 12, 2023, Brackett visited the Property for two hours to inspect the damage. (*Id.* at 10). Brackett also spoke with Pranav about the weather conditions prior to the collapse. (*Id.* at 14-15). Pranav told Brackett that storms had produced heavy rain before the wall failed, but Pranav did not mention anything about wind. (*Id.* at 15). Brackett did not ask Pranav about wind because Brackett saw no collateral indicators of wind damage, such as twigs or branches in the driveway or yard; however, he does not know whether Pranav had cleaned up the Property beyond having sandbags and tarps placed. (*Id.*). Brackett also observed a tree that had fallen underneath the failed part of the retaining wall. (*Id.*).

Brackett would eventually issue three separate reports over the course of this dispute. The first report ("Brackett's First Report"), dated January 24, 2023, concluded that the retaining wall (and subsequently, the driveway) collapsed because of "a lack of adequate drainage and a lack of lateral reinforcement perpendicular to the retaining wall." (Doc. 17-4 at 22). After investigating the claim and receiving Brackett's First Report, State Farm denied the claim on January 26, 2023. (Doc. 17-6). State Farm concluded the loss was not covered under the Policy because the retaining wall collapsed due to hydrostatic pressure and/or a defect in its design and reinforcement, causes that were excluded from coverage by the terms of the Policy. (*Id.*).

During the insurance investigation, Pranav hired Scott Skipper with Skipper Engineering to place sandbags and tarps around the collapsed retaining wall and driveway. (Doc. 17-3 at 9). Skipper, who obtained his Bachelor of Science in civil engineering in 1986 from the University of Alabama, is a registered engineer and land surveyor. (Doc. 16-6 at 8). He is a civil engineer, not a structural engineer, and generally deals with storm drainage, sanitary sewers, potable water, road building, and general site improvement (such as grading plans). (*Id.*). By contrast, structural engineers deal with details and structures surrounding concrete and steel structures. (*Id.*).

Skipper visited the Property within a few days of the loss. (*Id.*). The purpose of this visit was to determine how to repair the home rather than to give an opinion as to what caused the collapse. (*Id.* at 11). On February 3, 2023, Skipper wrote a letter to Pranav offering theories as to the retaining wall's collapse. (Doc. 17-7). Skipper agreed there was inadequate drainage behind the retaining wall and the wall was structurally unsound; however, he disagreed with Brackett's conclusion that "groundwater was the mechanism that triggered the collapse of the wall." (*Id.*). Skipper noted that in the 17 years since the retaining wall was constructed, there had been many large rainfall events which did not cause the wall to collapse. (*Id.*). He suggested, as a "plausible theory," that the roots from trees at the toe of the wall might have been moved by wind in such force as to trigger the wall's

collapse. (*Id.*). Skipper further thought that Brackett could not "say that groundwater was unquestionably the cause of the failure." (*Id.*). Skipper ultimately concluded there could have been numerous factors that triggered the collapse and he doubted anyone could identify a single cause. (*Id.*).

Although Pranav testified he believed the storm caused the Property damage, he admitted he was not an engineer and could not provide specific details about the cause of the damage. (Doc. 17-1 at 8). Pranav stated he would rely on Skipper's opinion regarding the cause of the damage. (*Id.* at 17). Mamta similarly testified that she did not know what caused the damage. (Doc. 17-3 at 8-9).

On June 2, 2023, Brackett responded to the theories set forth in Skipper's February 3, 2023 letter. (Doc. 17-4 at 31-35). Brackett noted that Skipper agreed the drainage behind the wall was inadequate and the wall was structurally unsound. (*Id.* at 32). He also rejected Skipper's theory regarding wind as a contributing factor to the wall's collapse. Brackett observed that the closest National Weather Service ("NWS") recording station was located at the Gadsden Municipal Airport, approximately 5 miles west of the Property. (*Id.* at 33). The NWS records for the Gadsden Airport on January 3, 2023, reflected the maximum wind speed as 22 miles per hour and the maximum wind gusts at 29 miles per hour. (*Id.*). Accordingly, Brackett reported:

> Based on the weather data, the winds on January 3, 2023, can be
> described as up to a strong breeze with large branches in continuous

> motion. It is not until around 55 mph that small trees may be blown over and uprooted.
>
> Mr. Skipper does not provide any evidence that a wind event occurred on the property or that wind affected the wall. His statement that wind could be the cause is speculative and not based on evidence.

(*Id.*). Based on the maximum wind speeds recorded and the corresponding affect on trees, Brackett declined to change his original conclusion that a lack of adequate drainage and lateral reinforcement caused the retaining wall to collapse. (*Id.*).

After State Farm ultimately retained Brackett as an expert witness in this action, Brackett issued his third report on August 19, 2024. (Doc. 17-4 at 8-15*)*. He restated the positions of his first two reports and, more specifically, stated the retaining wall was "progressively deteriorating due to cyclical increases in hydrostatic pressure during periods of heavy rainfall from inadequate drainage and inadequate lateral reinforcement." (*Id.*). At his deposition, Brackett explained that the wall was "progressively deteriorating" as demonstrated by several dark stained cracks with rounded edges in the retaining wall which indicated the cracks were "not due to recent failure." (Doc. 17-5 at 12-13).

State Farm moved for summary judgment in December 2024. (Docs. 17-18). At the same time, State Farm moved to strike the testimony of two of the Mishras' experts: Eddie Perman and Skipper. (Docs. 15, 16). On September 25, 2025, the court granted State Farm's motion to strike Skipper's testimony because it was not

sufficiently reliable as required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (Doc. 27).

## III. Analysis

In support of its motion for summary judgment, State Farm first contends the Mishras cannot prove the Policy covers their loss and the Policy clearly excludes the loss from coverage. Second, it argues the Mishras cannot show they are entitled to emotional distress damages. Finally, State Farm asserts the Mishras cannot prove the elements of their bad faith claim.

### A. Count I – Breach of Contract

To succeed on their breach of contract claim, the Mishras must demonstrate (1) the existence of a valid contract binding them and State Farm; (2) their own performance under the contract; (3) State Farm's nonperformance; and (4) damages. *See S. Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995) (citations omitted). Courts generally employ a three-step inquiry to determine whether a claim is covered by an insurance policy. *See USF Ins. Co. v. Metcalf Realty Co.*, No. 2:12-CV-02529-AKK, 2013 WL 4679833, at *5 (N.D. Ala. Aug. 30, 2013) (citations omitted). First, the party seeking coverage under the policy bears the burden of establishing the claim is covered by the policy's initial grant of coverage. *Jordan v. Nat'l Acc. Ins. Underwriters Inc.*, 922 F.2d 732, 735 (11th Cir. 1991) ("Under Alabama law the general rule is that the insured bears the burden of

proving coverage.") (citation omitted); *USF Ins. Co.,* 2013 WL 4679833 at \*5. Next, the insurer has the burden of establishing an exclusion in the policy precludes coverage for the claim. *Id.*; *Jordan*, 922 F.2d at 735. Then, if a policy exclusion potentially precludes coverage for a claim, the burden shifts back to the party seeking coverage to establish an exception to the exclusion applies. *USF Ins. Co.*, 2013 WL 4679833 at \*5.

In determining whether coverage exists, insurance policies should be construed "to give effect to the intention of the parties." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001) (quoting *Att'ys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So. 2d 866, 870 (Ala. 1996)). Additionally, "it is well established 'that when doubt exists as to whether coverage is provided under an insurance policy, the language used by the insurer must be construed for the benefit of the insured.'" *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 898 (11th Cir. 2009) (quoting *St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Ctr.*, 595 So. 2d 1375, 1377 (Ala. 1992)). "It is equally well settled, however, that insurers have the right to limit their liability by writing policies with narrow coverage." *Id.* (citing *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987)). Accordingly, if there is no ambiguity in the terms of an insurance policy, a court must enforce the policy "as written and cannot defeat express provisions in a policy by making a

new contract for the parties." *St. Paul Fire and Marine Ins. Co.*, 572 F.3d at 898 (citing *Johnson*, 505 So. 2d at 365).

"While ambiguities or uncertainties in an insurance policy should be resolved against the insurer, ambiguities are not to be inserted by strained or twisted reasoning." *Twin City Fire Ins. Co.*, 817 So. 2d at 692 (citation omitted). Moreover, just because a term is undefined in the policy does not mean the policy is ambiguous; rather, "the court should simply give the undefined word or phrase the same meaning that a person of ordinary intelligence would give it." *Id.* (citation omitted). Finally, in analyzing the terms of an insurance policy, "a court must examine more than the isolated sentence or term; it must read each phrase in the context of all other provisions." *Id.* at 691 (citation omitted).

## 1. The Policy excludes the Mishras' loss.

State Farm argues that based on the undisputed evidence, it did not breach its contract with the Mishras because the Policy language—specifically, the provisions excluding coverage for both hydrostatic pressure and "defect, weakness, inadequacy, fault or unsoundness" in design or construction—excludes the Mishras' loss. It further asserts the Mishras have no knowledge or opinion as to

what caused the retaining wall to collapse,[4] and they have offered no admissible evidence that another cause triggered the collapse.

In *Nix v. State Farm Fire & Casualty Co.*, the insureds made a claim under their policy following the collapse of a retaining wall which resulted in basement flooding. 444 F. App'x 388 (11th Cir. 2001). State Farm denied their claim because the policy excluded coverage for collapses caused by construction defects and damage caused by groundwater. *Id.* at 389. The Nixes filed suit for breach of contract and bad faith. *Id.* State Farm's expert engineer, Voll, testified that the retaining wall failed because it was not properly built and thus collapsed because of hydrostatic pressure. *Id.* at 390. Voll also testified that (1) the retaining wall lacked reinforcing steel (required by a local building code) and could not withstand the pressure created by groundwater that accumulated during a heavy rainfall and (2) a french drain, which had been covered with clay soil instead of gravel, did not disperse the groundwater. *Id.* Based on the opinion of Terry Nix and a contractor who made temporary repairs to the wall, the Nixes argued the main line water pipe burst and caused the collapse. However, neither opinion was admissible as lay testimony given neither individual witnessed the wall collapse or had personal

---

[4] State Farm also contends that even if the Mishras had an opinion regarding the cause of the collapse, that opinion would be insufficient because, as lay witnesses, they cannot offer testimony about the cause of damage; rather, the Mishras must provide expert testimony regarding causation. (Doc. 18 at 15-16).

knowledge regarding the construction of the home. *Id.* The district court granted summary judgment in favor of State Farm because the Nixes did not contradict State Farm's expert testimony that the damage was caused by construction defects; the Eleventh Circuit affirmed. *Id.* at 389-90.

The Mishras object to State Farm's reliance on *Nix* on the basis Skipper's testimony sufficiently calls into question the cause of the retaining wall's collapse. As noted above, however, the court has concluded Skipper's testimony is due to be excluded given the Mishras have not established his opinions are sufficiently reliable as testable, peer-reviewed, or generally accepted. (Doc. 27). Because Skipper cannot testify as an expert, his testimony is inadmissible unless it involves his actual observation of the collapse. *See* Fed. R. Evid. 701; *Nix*, 444 F. App'x at 390. But Skipper did not witness the collapse, and there is no suggestion he was personally involved with the original construction of the retaining wall.[5] Therefore, even if the Mishras sought to introduce Skipper's opinion as lay testimony, which they do not, it would be inadmissible under Rule 701.

Consequently, *Nix* is directly on point. Here, the Policy excludes from coverage (1) any loss caused by pressure or weight of water to a retaining wall and (2) any loss consisting of a defect, inadequacy, or unsoundness in the design,

---

[5] Notably, when asked whether he recalled there being wind, Skipper testified, "I do not. I didn't even realize that we had had rain that night." (Doc. 16-6 at 19).

specifications, workmanship, or construction. (Doc. 17-2 at 19-23). As in *Nix*,
State Farm has presented expert testimony that the retaining wall collapsed because
of hydrostatic pressure caused by inadequate drainage of the groundwater under
the retaining wall. Also like *Nix*, the Mishras have not presented any admissible
evidence that contradicts State Farm's expert testimony.[6] Therefore, they cannot
prove the retaining wall collapsed because wind caused movement in the tree roots.
Without evidence as to the cause of the retaining wall's collapse, the Mishras
cannot establish their loss is covered by the Policy or an exception to an exclusion,
and State Farm is entitled to summary judgment on the Mishras' breach of contract
claim.

### 2. The Policy is not ambiguous.

In response to State Farm's motion, the Mishras contend the Policy language
is ambiguous. Under Alabama law, the question of whether a contract is
ambiguous is a question of law to be decided by the court. *Federated Mut. Ins. Co.
v. Abston Petroleum, Inc.*, 967 So. 2d 705, 709 (Ala. 2007). Where the contract
terms are plain and unambiguous, construing the legal effect of the contract is also
a question of law to be decided by the court. *Id.*

---

[6] The court notes the Mishras did not witness the collapse but instead discovered it the following
morning. (Doc. 17-1 at 7-8). Further, Pranav stated he would rely on Skipper's opinion regarding
the cause of the collapse, and Mamta testified she did not know what caused the damage. (*Id.* at
17; Doc. 17-3 at 8-9). Skipper agreed the retaining wall was structurally unsound and had
inadequate drainage when he testified the retaining wall was "not sufficient per engineering
standards." (Doc. 17-8 at 14).

The Mishras first claim the retaining wall falls within the definition of "dwelling" because it is attached to the residence's structure, and the Policy provides coverage for the collapse of any building structure due to wind. (Doc. 23 at 22-23). Therefore, they argue, they reasonably expected the Policy would cover their loss. As explained above, however, the Mishras have presented no admissible evidence the retaining wall collapsed due to wind. Skipper's testimony is not admissible as either expert or lay testimony, and the Mishras offer no other evidence that wind caused the retaining wall to collapse. Even if the retaining wall comes within the definition of "dwelling"—a question the court does not answer—the analysis would not change.

The Mishras next argue the exclusions are ambiguous because of the following ensuing loss provision: "'However, we will pay for any resulting loss from [the exclusions listed above] unless the resulting loss is itself a Loss Not Insured as described in this Section.'" (Doc. 23 at 24 (quoting Doc. 17-2 at 21)). Because the Policy does not define "resulting loss," they assert the Policy is ambiguous and this court should interpret the exclusions as narrowly as possible to provide maximum coverage for them. They further state, "Applying such an interpretation likely provides coverage for the Mishras since the collapse of the retaining wall due to a windstorm (a covered loss) was, in turn, a 'resulting loss' from the relevant exclusions. Put simply, the ensuing loss provisions, when

interpreted in context of the entire Policy, render the exclusions sufficiently ambiguous to find coverage for the loss." (Doc. 23 at 25).

As with their argument regarding whether the retaining wall is considered a "dwelling," this argument depends on their theory that wind caused the loss. However, as explained at length above, the Mishras have offered no admissible evidence that wind was the cause of the loss.

Further, as State Farm contends, the Alabama Court of Civil Appeals has determined that a substantially similar resulting loss provision was unambiguous. *See Phillips v. Nat'l Sec. Fire & Cas. Co.*, 59 So. 3d 711, 716 (Ala. Civ. App. 2010).[7]  There, the damage to the house was caused by faulty workmanship to the roof—a cause that was specifically excluded from coverage under the relevant policy. *Id.* at 712-13. Nevertheless, the plaintiff argued the ensuing loss provision

---

[7] The policy language in *Phillips* stated:

> *13. Errors, Omissions, and Defects*—We do not pay for loss which results from one or more of the following:
>
> a.  an act, error, or omission (negligent or not) relating to:
>
>     ....
>
>     2) the design, specification, construction, workmanship, installation of property;
>
>     ....
>
> b.  a defect, a weakness, the inadequacy, a fault, or unsoundness in material used in construction or repair whether on or off the insured premises.
>
> We do pay for an ensuing loss unless the ensuing loss itself is excluded.

59 So. 3d at 712-713. *Phillips* does not state whether the relevant policy defined "ensuing loss."

entitled him to coverage because that provision "render[ed] ambiguous the specific coverage granted in the policy." *Id.* at 713. The court disagreed, finding "the ensuing-loss provision in the exclusions section of the policy cannot reasonably be interpreted to create coverage beyond the perils initially insured against, and the coverage allowed under the ensuing-loss provision is not ambiguous as applied" to the facts of *Phillips*. *Id.* at 716.

Here, as in *Phillips*, the Mishras' argument regarding the ensuing-loss provision requires the court to interpret the Policy to create coverage where it specifically excludes coverage. Read in the context of the entire policy, the court cannot interpret the ensuing-loss provision to create coverage where it was plainly not contemplated at the time the parties entered into their contractual relationship. Accordingly, State Farm is entitled to summary judgment on the Mishras' claim for breach of contract.[8]

## B. Count II – Bad Faith

Under Alabama law, a plaintiff can recover for an insurer's bad faith refusal to pay a claim under two theories: a "normal" bad-faith claim and an "abnormal" bad-faith claim. *White v. State Farm Fire & Cas. Co.*, 953 So. 2d 340, 347–48 (Ala. 2006). A normal bad faith claim is one where the insurer refused to pay, and

---

[8] Because State Farm is entitled to summary judgment on the breach of contract claim, the court does not reach its argument regarding the Mishras' entitlement to damages for emotional distress.

an abnormal bad faith claim is one where the insurer failed to investigate. "These are not two torts but a single tort with different options for proof." *Coleman v. Unum Grp. Corp.*, 207 F. Supp. 3d 1281, 1284 (S.D. Ala. 2016); *see also State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 256–58 (Ala. 2013). Abnormal bad-faith claims

> have been limited to those instances in which the plaintiff produced substantial evidence showing that the insurer (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim.

*State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 306–07 (Ala. 1999)

To prove State Farm's bad faith refusal to pay, the Mishras must show by substantial evidence:[9] (1) the breach of an insurance contract between the parties; (2) State Farm's intentional refusal to pay their claim; (3) the absence of any reasonably legitimate or arguable reason for that refusal; and (4) State Farm's actual knowledge of the absence of any legitimate or arguable reason. *See Lunsford*, 621 So. 2d at 978. To prove State Farm failed to investigate, the Mishras must prove an additional element: State Farm intentionally failed to determine

---

[9] Substantial evidence is "'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" *See Indep. Fire Ins. Co. v. Lunsford*, 621 So. 2d 977, 978 (Ala. 1993) (quoting *West v. Founders Life Assur. Co. of Fla.*, 547 So. 2d 870, 871 (Ala. 1989)).

whether there was a legitimate or arguable reason to refuse to pay the claim. *See Walker v. Life Ins. Co. of N. Am.*, 59 F.4th 1176, 1187 (11th Cir. 2023).

The Mishras "bear[] a heavy burden" on their bad faith claim—they must show the "underlying contract claim [is] so strong that [they] would be entitled to a preverdict judgment as a matter of law." *See Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 16 (Ala. 2001); *Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23, 32 (Ala. 2008). This is true for both normal and abnormal bad faith claims. *See Walker*, 59 F.4th at 1187 (citing *White*, 953 So. 2d at 348 (normal bad faith), and *Brechbill*, 144 So. 3d at 258 (abnormal bad faith)). Further, "all bad-faith claims fail on summary judgment 'where the trial court . . . expressly [finds] as a matter of law that the insurer had a reasonably legitimate or arguable reason for refusing to pay the claim at the time the claim was denied.'" *Id.* (quoting *Brechbill*, 144 So. 3d at 260). Put another way, to defeat the Mishras' bad faith claim, State Farm "does not have to show that its reason for denial was correct, only that it was arguable." *See Liberty Nat. Life Ins. Co. v. Allen*, 699 So. 2d 138, 143 (Ala. 1997).

As established above, the Mishras cannot show, as a matter of law, State Farm breached the terms of the Policy. State Farm is therefore entitled to summary judgment on the Mishras' bad faith claim. Even if the Mishras could establish a question of fact regarding the cause of the wall's collapse, State Farm would still be entitled to summary judgment on the claim for bad faith.

The Mishras assert State Farm "relied upon an ambiguous portion of the [P]olicy as a lawful basis to deny [their] claim and/or failed to conduct a proper investigation into the possibility that wind caused the loss." (Doc. 23 at 17). First, the Mishras' argument regarding ambiguity is focused not on the exclusions on which State Farm relied or the investigation it conducted but the ensuing-loss provision. As explained above, however, the ensuing loss provision is not ambiguous and cannot be interpreted to create coverage where it does not exist.

Second, as the Mishras acknowledge in their brief, "[f]rom the date of the loss to the date [the Mishras] filed their Complaint, multiple correspondences were sent back and forth, each referencing competing or differing findings from subject experts. Both Parties contest and dispute the others' statement and position regarding the cause of the loss." (Doc. 23 at 9). Here, there is no question State Farm investigated the Mishras claims. State Farm sent an inspector to the Property within two days of Pranav reporting the loss. State Farm then hired Brackett to further investigate the cause of the damage. The undisputed facts establish Brackett reviewed and responded to Skipper's letter regarding alternate theories about the cause of the wall's collapse.[10] Further, the Mishras do not argue Brackett was not qualified to conduct this investigation. *Cf. Slade*, 747 So. 2d 293, 316 (holding the

---

[10] The Mishras do not cite any case law requiring State Farm to investigate potential alternative theories concerning the cause of the damage after the claim was denied.

plaintiffs could prove bad faith where they claimed lightning caused their loss but the insurer never sent an investigator qualified to conduct a lightning investigation or interviewed witnesses present).

In *Slade*, the Alabama Supreme Court stated that an insurer has a responsibility to marshal all facts necessary to determine whether coverage exists *before* its refusal to pay and "[t]his duty must include a duty to investigate a covered event that an insured claims has caused his loss." 747 So. 2d at 316. Here, Brackett issued his First Report on January 24, 2023, and State Farm denied the claim on January 26, 2023, *before* Skipper wrote his February 3, 2023 letter to Pranav suggesting other factors might have caused the retaining wall to collapse.[11] Further, the Mishras both testified they did not know what caused the retaining wall to collapse. This sequence of events is significant, and the facts here distinguish it from *Slade*, in which the plaintiffs reported their retaining wall collapsed due to a lightning strike, an event specifically covered by the insurance policy at issue. 747 So. 2d at 297. Accordingly, State Farm is entitled to summary judgment on the Mishras' claim for bad faith.

### C. Count III – Fictitious Parties

---

[11] In their briefing, the Mishras do not cite any evidence demonstrating when Skipper's February 2023 letter to Pranav was provided to State Farm.

The Mishras' complaint states a count for "fictitious defendants" in which they demand judgment separately and severally against fictitious parties. (Doc. 1-1 at 13). Neither party addresses this count. The court has located no Alabama authority permitting a specific cause of action for fictitious parties. Instead, Alabama Rule of Civil Procedure 9(h) permits a plaintiff to designate a fictitious opposing party if the plaintiff is ignorant of the name of the opposing party. There is no such corresponding federal rule. *See* Fed. R. Civ. P. 9; *see also Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (explaining that fictitious party pleading is not generally allowed in federal court unless the description of the defendant is so specific that service could be made on the individual).

The Mishras do not describe the three fictitious parties with enough particularly to serve those individuals or corporate entities. (*See* Doc. 1-1 at 4-5). Further, they have not sought to substitute any specific party for the fictitious parties. Accordingly, Count III is due to be dismissed.

The Mishras may object to the court's conclusion regarding fictitious parties within 14 days of the date of this Memorandum Opinion. *See* Fed. R. Civ. P. 56(f) (a court may enter judgment on grounds not raised by a party after giving notice and a reasonable time to respond). If they do not file a timely objection citing Alabama authority recognizing an independent cause of action for fictitious parties, the court will dismiss Count III.

24

## IV. Conclusion

For the foregoing reasons, State Farm's motion for summary judgment is **GRANTED** regarding Counts I and II. (Doc. 17). The court has determined Count III is to due to be dismissed. To the extent the Mishras can provide the court with authority to the contrary, they must do so within **14 days** of the date of this order. If they do not do so or if they notify the court they do not object to the dismissal of Count III, the court will dismiss this claim.

**DONE** this 30th day of September, 2025.

*Staci G. Cornelius*
_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE